**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Robin Jefferson, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ProEdge Investors LLC a/k/a SmartytheRealtor, Smarty the Realtor, LLC, and eXp Realty LLC,<br><br>        Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1.      Robin Jefferson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against ProEdge Investors LLC a/k/a SmartytheRealtor, Smarty the Realtor, LLC (together "SmartytheRealtor") and eXp Realty LLC ("eXp", and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.      Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing telephone call to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

**Parties**

3.      Plaintiff is a natural person who resides in Monroe Township, New Jersey.

4.      eXp is a Washington limited liability company with its principal place of business in Bellingham, Washington.

5.      eXp is a global real estate brokerage that contracts with over 87,000 real estate

1

agents worldwide, and purports to be the largest real estate brokerage in North America.[1]

6.      eXp is a Pennsylvania-licensed real estate broker with license number RB067456, and, upon information and belief, associates itself with over 1,800 actively-licensed Pennsylvania brokers and real estate salespersons.

7.      ProEdge Investors LLC is a Nevada liability limited company located in Philadelphia, Pennsylvania, which operates an eXp Realty-branded real estate agency called "SmartytheRealtor."

8.      Moreover, during the preparation and investigation of this complaint, Smarty the Realtor, LLC was opened, which upon information and belief, is either a superseding or additional entity created by John Smart, as part of the SmartytheRealtor enterprise.

9.      SmartytheRealtor's namesake is derived from a play on words of John Smart's last name, as Mr. Smart, upon information and belief, is the owner and operator of SmartytheRealtor and goes by the nickname of "Smarty."

10.      Mr. Smart is a Pennsylvania-licensed real estate salesperson with license number RS348336, but maintains an "employment" designation under eXp.

11.      In addition to a conventional real estate business, Mr. Smart operates a number of other enterprises, including the real estate bidding app, HomeOffersEZ,[2] and ProEdge CRM, an "AI-Power CRM" designed to "Automate, Convert & Close More Deals."[3]

### Jurisdiction and Venue

12.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

---

[1]      *See* https://www.exprealty.com/join-exp (last visited May 19, 2026).
[2]      https://apps.apple.com/us/app/homeoffersez/id6477757998 (last visited May 19, 2026).
[3]      https://proedgecrmtech.com/ (May 19, 2026).

13.     Venue is proper before this Court under to 28 U.S.C. §§ 1391(b)(1) and (b)(2) as SmartytheRealtor is headquartered in this District, because Defendants engaged in the complained-of conduct from this District.

14.     In particular, Defendants directed their solicitation text messages to Plaintiff's telephone from this District.

### Factual Allegations

15.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(404) 702-XXXX.

16.     Plaintiff uses her cellular telephone as her personal residential telephone number.

17.     In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

18.     Plaintiff registered her cellular telephone number with the DNC Registry on September 5, 2016, and has maintained that registration through the present date.

19.     Beginning in 2025, Plaintiff received at least two text messages from telephone number (215) 598-6848 in a one-year period, seeking to solicit Plaintiff to engage in potential real estate transactions:



20.    Each of the text messages purport to be from SmartytheRealtor or from Mr. Smart himself, sent on behalf of Defendants.

21.    In fact, the telephone number that sent the aforementioned text messages, (215) 598-6848, is the listed callback telephone number on SmartytheRealtor's website.[4]

22.    SmartytheRealtor's website prominently displays that it is affiliated with "eXp Realty" and represents "eXp Realty in Greater Philadelphia and Surrounding Areas."[5]

23.    As mentioned *supra*, Mr. Smart's Pennsylvania real estate license lists eXp as his employer and corresponding real estate broker, with a date of association of April 18, 2019.

24.    Furthermore, eXp's national brand website, exprealty.com, lists Mr. Smart as one of its licensed real estate agents.[6]

---

[4]    https://smartytherealtor.com/ (last visited May 19, 2026).
[5]    *Id*.
[6]    https://www.exprealty.com/agents-search/John%20R-Smart_49fc1b4c-050b-11eb-95a1-31bf2aaf2428 (last visited May 19, 2026).

25.     Plaintiff does not know the reason why Defendants sought to solicit her to engage in a real estate transaction, as Plaintiff is not currently interested in buying or selling any real estate, and has made no inquiries to do so.

26.     Plaintiff did not request real estate services from Defendants, did not use Defendants' website(s) or submit any inquiries on them, and did not otherwise communicate with Defendants prior to receiving these telemarketing communications.

27.     Moreover, Defendants' messages presuppose a lack of written consent or prior dealings, as they expressly acknowledge and account for the possibility that the person being contacted has a real estate agent already or has no interest in selling their property.

28.     Upon information and belief, rather than by responding to a consumer's inquiry and provision of consent, Defendants obtained Plaintiff's telephone number via records searches or third-party databases that link the suspected telephone numbers of homeowners with MLS listings, searching for *expired* listings to thereafter offer real estate services to those homeowners.

29.     The text messages at issue were sent for non-emergency purposes.

30.     The purpose of the solicitation communications at issue was to advertise and to market Defendants' businesses or services.

31.     More particularly, the purpose of the text messages was to offer real estate representation to Plaintiff to satisfy her real estate needs, in exchange for compensation via a commission or other fee.

32.     The FCC has already ruled that similar real estate solicitations, sent absent prior express written consent, violate the TCPA and the DNC Registry's requirements.

33.     Specifically, in 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate

agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005).

34. In interpreting the definition of "telephone solicitation," the FCC rejected this exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94.

35. As a result, Defendants' conduct fits squarely within the TCPA's definition of telemarketing or solicitation, as reinforced by the FCC.

36. Defendants' conduct is also consistent with the conduct alleged in *Wright, et al. v. EXP Realty, LLC*, Case No. 6:18-cv-018151, which resulted in a court-approved class settlement pursuant to Federal Rule of Civil Procedure 23(e).

37. As a result, eXp knew, or should have known, that it and its affiliates and employees were, and are, engaging in prohibited telemarketing conduct by delivering solicitation text messages, absent prior express written consent, to consumers who registered their telephone numbers on the DNC Registry.

38. eXp knew, or should have known, that it was generating or accepting leads that were obtained in violation of the TCPA, and—despite having a heightened duty to confirm that eXp and its employees complied with the TCPA in the face of numerous prior consumer complaints—proceeded to accept the benefits of those unlawful leads anyway.

39. eXp also appears to provide "[p]owerful lead generation platforms" to its agents, along with training and mentorship for lead generation techniques.[7]

---

[7] https://cdn.bfldr.com/BI7DUWTF/at/f5pqbmkb9rrm648rbjb44b/US_eXp_ Explained_-

6

40.    For example, eXp offers to its agents a "Making it Rain" lead generation service for its agents, and provides example scripts and questions for dealing with consumers with "expired or cancelled listings."[8]

41.    Moreover, upon information and belief, eXp receives a portion of commission proceeds derived from any representation of a consumer by its affiliates and employees.[9]

42.    If a consumer were to give prior express written consent to Defendants to receive telemarketing communications, they do so by "[b]y proceeding, I am electronically signing and consenting to receive marketing communications (about real estate brokerage services and one or more properties that I may buy, sell, or rent), that may be delivered to me via email, telephone and/or text messaging (using "automated technology" such as an automatic telephone dialing system, and/or an artificial or prerecorded voice), from eXp Realty® and its independent contractor real estate professionals using the contact information I provided."[10]

43.    Lastly, to the extent that eXp contends that the conduct of Mr. Smart cannot be imputed to it, eXp mandates the following:

> All real estate brokerage relationships established for any real estate transactions, regardless of agency status, exist solely as between eXp and the client (or customer), and not as between Agent and the client (or customer). Agent provides real estate services to the client (or customer) on eXp's behalf; all listings taken by Agent in connection with eXp's business are and remain the separate and exclusive property of eXp, and not of Agent. During the Term of this ICA, Agent shall diligently carry out Agent's duties on behalf of eXp with all reasonable skill, care,

---

_JOIN_SITE_updated_05022024.pdf, at 11 (last visited May 19, 2026).

[8]    https://makingitrain.exprealty.com/    (last    visited    May    19,    2026); https://docs.google.com/document/d/e/2PACX-1vSkOVX9GzMk_WqYo9BtGnOZEFbJiJh0leAxAcVMxDzDsfF5csHstMvPoKIRT7odpKxXSJZbTIDc_iWs/pub (last visited May 19, 2026).

[9]    *See,*    *e.g.,* https://www.sec.gov/Archives/edgar/data/1495932/000155837024006375/expi-20240331xex10d3.htm (last visited May 19, 2026).

[10]    https://johnsmart.exprealty.com/contact.php (last visited May 19, 2026).

7

and diligence as expected of a licensed real estate professional in Agent's state(s) of licensure.[11]

44.    As a result, eXp is either directly liable for sending the text messages at issue, or in the alternative, is liable for Mr. Smart sending the text messages at issue on a theory of actual authority, implied authority, or ratification, given that the messages directed consumers to eXp's brokerage for real estate representation, eXp had notice that it, and its various affiliates, engaged in similar telemarketing conduct in violation of the TCPA, and eXp nevertheless continued to accept the benefits of its agents' conduct.

45.    Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her telephone number.

46.    Furthermore, Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her telephone number.

47.    Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

48.    Moreover, Plaintiff immediately instructed Defendants, after the first text message, to stop harassing her, to which Defendants ignored by continuing to send her communications about their real estate services.

49.    Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her telephone number with the DNC Registry.

**Class Action Allegations**

50.    Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

---

[11]    https://www.sec.gov/Archives/edgar/data/1495932/000155837024006375/expi-20240331xex10d3.htm (last visited May 19, 2026).

All persons throughout the United States (1) to whom ProEdge Investors LLC, Smarty the Realtor, LLC, or eXp Realty LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting ProEdge Investors LLC's, Smarty the Realtor, LLC's, or eXp Realty LLC's, or their business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before ProEdge Investors LLC, Smarty the Realtor, LLC, or eXp Realty LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) where the person's telephone number is not assigned to a customer of ProEdge Investors LLC, Smarty the Realtor, LLC, or eXp Realty LLC, (4) within four years preceding the date of this complaint through the date of class certification.

51. Excluded from the class is Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

52. Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

53. The exact number of members of the class are unknown to Plaintiff at this time and can be determined only through appropriate discovery.

54. The members of the class are ascertainable because the class is defined by reference to objective criteria.

55. In addition, the members of the class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

56. Plaintiff's claims are typical of the claims of the members of the class.

57. As it did for all members of the class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

58. Plaintiff's claims, and the claims of the members of the class, originate from the

9

same conduct, practice, and procedure on the part of Defendants.

59.     Plaintiff's claims are based on the same theories as are the claims of the members of the class.

60.     Plaintiff suffered the same injuries as the members of the class.

61.     Plaintiff will fairly and adequately protect the interests of the members of the class.

62.     Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

63.     Plaintiff will vigorously pursue the claims of the members of the class.

64.     Plaintiff has retained counsel experienced and competent in class action litigation.

65.     Plaintiff's counsel will vigorously pursue this matter.

66.     Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

67.     The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

68.     Issues of law and fact common to all members of the class are:

    a.     Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b.     Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

    c.     Defendants' violations of the TCPA; and

    d.     The availability of statutory penalties.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

70. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

71. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

72. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

73. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

74. The damages suffered by the individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

75. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

76. There will be no extraordinary difficulty in the management of this action as a class action.

77. Defendants acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the proposed class**

78.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-77.

79.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

80.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

81.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

82.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

83.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the DNC Registry, which is a listing

12

of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

84.    Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the class, more than one solicitation telephone call in a 12-month period in violation of 47 C.F.R. § 64.1200.

85.    In the alternative, Mr. Smart violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation text message in a 12-month period to Plaintiff's telephone number without prior express written consent, and eXp is liable for Mr. Smart's violations because (1) it ratified Mr. Smart's conduct by either accepting leads and commission revenue generated by Mr. Smart's telemarketing campaign, and agreeing to share revenue with Mr. Jackson that arose out of that telemarketing campaign, and promoting, and supporting Mr. Smart's realty business as an eXp-licensed agent; or (2) Mr. Smart acted with actual or apparent authority on behalf of eXp in telemarketing  to consumers without obtaining prior express written consent.

86.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action;

b.    Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.    Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

13

e.   Enjoining Defendants from continuing its violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.   Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g.   Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(c)(5)(C);

h.   Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.   Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j.   Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: May 28, 2026.

*/s/ Todd M. Friedman*
Todd M. Friedman (SBN 310961)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
840 1st Ave Suite 400
King of Prussia, PA 19406
Phone: 323-306-4234
tfriedman@toddflaw.com

*/s/ Bryan A. Giribaldo*
Bryan A. Giribaldo* (to seek admission *pro hac vice*)
Texas Bar No. 24124547
Alex D. Kruzyk* (to seek admission *pro hac vice*)
Texas Bar No. 24117430
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

14